ALLIANT HEALTH SYSTEM, Appellant,

v.

KENTUCKY UNEMPLOYMENT INSUR-
ANCE COMMISSION and Velta L.
Mallaley, Appellees.

No. 94–CA–000132–MR.

Court of Appeals of Kentucky.

Oct. 20, 1995.

Case Ordered Published by Court
of Appeals Dec. 22, 1995.

Stephen S. Frockt, Prospect, for Appellant.

Beverly H. Haverstock, Frankfort, for Appellee Kentucky Unemployment Insurance Commission.

Velta L. Mallaley, Louisville, pro se.

Before COMBS, EMBERTON and
WILHOIT, JJ.

EMBERTON, Judge.

Appellant, Alliant Health System, instituted a "no-fault" attendance policy which was to be applied uniformly to all employees. The policy provided that an employee may be discharged after eight incidents of absenteeism regardless of the reason. An incident is defined as any period of consecutive scheduled work days missed due to personal or dependent illness. Eight incidents within a 52 week period (based on twenty-six pay periods) will result in discharge of the employee. The penalty imposed on the employee is based on the following matrix:

| INCIDENTS | PENALTY |
| --- | --- |
| 1–3 | none |
| 4 | informal counseling |
| 5 | step I (written warning) |
| 6 | step II (written warning) |
| 7 | paid decisional leave |
| 8 | discharge |

Absences occurring on the weekend, defined as 3:00.p.m. on Friday until 7:00 a.m. on Monday, are subject to more stringent disciplinary actions. For disciplinary matters regarding weekend absences, the matrix is somewhat modified and the first incident will result in the informal counseling, compared to the fourth incident on a weekday. Discharge of an employee will result after only 5 incidents occurring on the weekend.

Velta Mallaley began working for Alliant in the food service division on the 6:00 a.m. to 2:00 p.m. shift, on January 27, 1992. Ms. Mallaley first missed work on April 28, 1992. The absence was due to personal illness which she verified with a physician's statement. Ms. Mallaley was next absent from May 14 through May 18, 1992 at which time she was under a doctor's care for a personal illness.

Ms. Mallaley was also absent from work to care for her two children, ages two and six on several occasions. She was absent on July 20, 1992 to care for her two-year-old child who has health problems related to heart complications. She was out on August 3, 1992, as the result of car trouble. Because of babysitter problems, she was absent on September 19 and 20. Ms. Mallaley had been previously counselled on an informal basis; however, on September 22, she received a step I warning.

She was absent as a result of babysitter problems on September 28 and the next day she was given a warning regarding her attendance. Ms. Mallaley again had babysitter problems on October 2. At this point, her absences totalled seven. Based on the attendance policy matrix, she was supposed to be penalized by paid decisional leave. Instead, she was given a step II warning.

Between October 17 and October 19, Ms. Mallaley's children were ill, and she found it necessary to stay home with them. Afterwards, on October 20, she was given her paid decisional leave. On the next day she was scheduled to work; October 23, she was absent for personal illness and was treated by a physician for asthmatic bronchitis. She was then discharged because of having a total of nine incidents within a twenty-six pay period cycle.

Ms. Mallaley filed a claim for unemployment benefits on November 6, 1992. Her claim was granted by the Cabinet for Human Resources, Division of Unemployment Insurance. Alliant appealed and the matter was heard before the Cabinet's referee, who affirmed.

Alliant then appealed the referee's decision to the Kentucky Unemployment Insurance Commission ("KUIC"), which also affirmed. Ultimately, the Jefferson Circuit Court affirmed and Alliant now appeals to this court.

■ Alliant contends that this appeal raises a question of first impression in this Commonwealth, namely whether an employer should be required by a state administrative agency to apply its employment policies subjectively in contravention to the controlling federal and local employment laws. We are not persuaded this is the proper issue before the court and agree with KUIC that the only question presented is whether Ms. Mallaley was guilty of misconduct which would preclude her from receiving unemployment benefits under the statutory scheme.

In pertinent part, Ky.Rev.Stat. (KRS) 341.370 sets forth the reasons a worker may be disqualified from receiving benefits while unemployed:

(b) He has been discharged for misconduct or dishonesty connected with his most recent work, . . .

■ The statute provides examples of, but does not define, "discharge for misconduct" as:

[including] but not limited to separation initiated by an employer for falsification of an employment application to obtain employment through subterfuge; knowing violation of a reasonable and uniformly enforced rule of an employer; *unsatisfactory attendance if the worker cannot show good cause for absences or tardiness;* damaging the employer's property through gross negligence; refusing to obey reasonable instructions; reporting to work under the influence of alcohol or drugs or consuming alcohol or drugs on employer's premises during working hours; conduct endangering safety of self or co-workers; and incar-

ceration in jail following conviction of a misdemeanor or felony by a court of competent jurisdiction, which results in missing at least five (5) days work. (emphasis added.)

Where there is no specific statutory definition, we must construe the words of the statute within their common usage. *Kentucky Unemployment Insurance Commission v. Jones*, Ky.App., 809 S.W.2d 715 (1991). This court has the duty to give statutory language its literal meaning unless to do so would produce a wholly absurd result. *Id.*

Alliant argues that the problem here stems from the fact that Ms. Mallaley was discharged under a "no-fault" attendance policy that is to be objectively administered. It further contends that permitting Ms. Mallaley to receive unemployment benefits after being discharged under this policy would be *tantamount to a subjective application of the* policy. Alliant suggests such an application of the attendance policy places it in jeopardy of violating local, state, and federal employment laws. We disagree.

■ Our review of Kentucky law reveals no case relating to employee discharge pursuant to a "no-fault" attendance policy and the employee's eligibility for unemployment compensation. However, we find the reasoning in *Gonzales v. Industrial Commission of the State of Colorado*, 740 P.2d 999 (Colo. 1987) (en banc), to be instructive. In that case, the Colorado Supreme Court reviewed an employee's right to receive unemployment compensation when he was discharged under a "no-fault" attendance policy. Gonzales was denied benefits because of his discharge pursuant to the policy. The Colorado Supreme Court held that for purposes of unemployment compensation, an employee's discharge under a "no-fault" attendance plan did not result in an automatic denial of statutory benefits.

■ It is permissible for an employer to utilize a "no-fault" attendance policy and such policy may form an appropriate basis for discharge from employment. However, we disagree, as did the *Gonzales* court, that the principles underlying a "no-fault" attendance policy are determinative for purposes of whether one is entitled to receive statutory unemployment compensation benefits. The very nature of a "no-fault" approach to employee attendance precludes consideration of the circumstances surrounding the absence. To permit an employee's discharge under a "no-fault" policy to constitute an automatic exclusion from benefits would, in essence, give the employer the ultimate authority in determining which employees are entitled to receive benefits. Such a result was not intended by the legislature.

The application of a no-fault attendance policy for purposes of employee discharge is separate and wholly distinct from the context of unemployment compensation. We conclude that Alliant's suggested result is not contemplated by the language of the statute. For purposes of unemployment compensation, the statute builds in a mitigating factor. The statute expressly states if the employee can show "good cause for [the] absences or tardiness," he or she may be entitled to statutory benefits.

■ In terms of discharge from employment, consideration of the underlying factors for the absence under a "no-fault" policy is prohibited by definition. However, the language of the statute clearly provides the latitude to consider the reason behind the absence for purposes of entitlement to unemployment compensation. We do not believe this requires the subjective application of the employer's no-fault attendance policy. The underlying principle of the statutory scheme for unemployment compensation evinces a humanitarian spirit and it should be so construed. *Ford Motor Co. v. Kentucky Unemployment Compensation Commission*, Ky., 243 S.W.2d 657, 659 (1951).

We agree with the trial court that KUIC's findings of fact were supported by substantial evidence. *Brown Hotel Co. v. Edwards*, Ky., 365 S.W.2d 299 (1962).

The judgment of trial court is affirmed.

All concur.