**Curtis HOLBROOK, Appellant,**

v.

**KENTUCKY UNEMPLOYMENT IN-SURANCE COMMISSION; and Tri–State Food, Appellees.**

**No. 2007–CA–001738–MR.**

Court of Appeals of Kentucky.

June 5, 2009.

Mary Going, Prestonsburg, KY, for appellant.

Tamela A. Biggs, Frankfort, KY, for appellee, Kentucky Unemployment Insurance Commission.

Lisa Stumbo, Prestonsburg, KY, for appellee, Tri–State Food.

Before COMBS, Chief Judge; NICKELL, Judge; GRAVES,[1] Senior Judge.

*OPINION*

NICKELL, Judge.

Curtis Holbrook has appealed from the order of the Perry Circuit Court affirming a decision of the Kentucky Unemployment

---

1. Senior Judge John W. Graves sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

Insurance Commission (the Commission) denying his request for benefits. We affirm.

Holbrook began working for Tri–State Food (a company that operates Kentucky Fried Chicken restaurants) as a maintenance technician on July 3, 2003. Holbrook was responsible for the maintenance of five locations in the eastern Kentucky region. Holbrook's work performance began to decline in 2005, as evidenced in the company employment records kept by human resources manager, Arguest Knipp. Knipp counseled Holbrook about the problems with his work performance and provided him with opportunities to correct the deficiencies in his assigned stores. In June 2006, Knipp followed up with three of the locations to determine whether Holbrook had completed the overdue repairs they had discussed months earlier. After determining that he had not done so, Knipp gave Holbrook the opportunity to resign his employment or be discharged. Holbrook opted to resign, and his last day of work was June 8, 2006.

Holbrook promptly filed a request for unemployment benefits. On July 5, 2006, a Notice of Determination was issued ruling that Holbrook was disqualified from receiving benefits based upon a finding that he had been discharged[2] for unsatisfactory work performance:

> THE EVIDENCE OF RECORD ESTABLISHES THAT THE WORK WAS WITHIN THE PROVEN ABILITY OF THE CLAIMANT. THE CLAIMANT WAS AWARE OF THE JOB RESPONSIBILITIES BUT REPEATEDLY FAILED TO PERFORM THE WORK SATISFACTORILY. THE EMPLOYER HAD WARNED THE CLAIMANT. THEREFORE, THE DISCHARGE WAS FOR MISCONDUCT IN CONNECTION WITH THE WORK.

Holbrook obtained an attorney and pursued an appeal of the determination. Referee Angela Gilpin held a hearing on September 12, 2006, on the issue of whether Holbrook had been discharged for misconduct, noting that it was Tri–State Food's burden to prove misconduct. The referee heard testimony from Holbrook and Knipp, and the employment records detailing Holbrook's work performance issues were introduced. In a decision entered September 15, 2006, the referee affirmed the determination, finding that Holbrook had been discharged for misconduct with work and was therefore disqualified from receiving benefits. In doing so, the referee relied upon the definition of "Discharge for misconduct" contained in Kentucky Revised Statutes (KRS) 341.370(6), as well as the definition in *Boynton Cab Co. v. Neubeck,* 237 Wis. 249, 296 N.W. 636 (1941), and stated as follows:

> Before a disqualification for misconduct may be imposed, it must be proven by a preponderance of evidence. Mere unsatisfactory work is not misconduct. Such unsatisfactory work must be accompanied by willful or wanton acts or omissions. Also, in cases of this nature, it is the general rule that a worker should be warned about his actions before an abrupt dismissal.

> It is clear that the claimant was aware that his job was in jeopardy if his work performance did not improve. The employer has presented a preponderance of

---

**2.** Although the Notice of Determination included the finding that Holbrook was "discharged," the record reflects that Holbrook was given the opportunity to resign or be discharged and that he opted to give a written resignation, which was made a part of the record. This disparity does not affect the overall validity of the factual finding or the ultimate conclusion.

evidence to establish that despite the claimant's knowledge that these items needed to be corrected, he failed to do so even two (2) months later. The claimant has offered no explanation for this failure to do so but simply alleges he was working to complete the items or that they had been done despite the evidence from store management that they were not completed. The claimant's actions constitute work-related misconduct. Therefore, it must be found that the claimant was discharged for misconduct connected with the work and is disqualified from receiving benefits based upon this separation.

Holbrook then appealed the referee's decision to the Commission, which entered an order affirming on November 17, 2006:

## FINDINGS OF FACT

The claimant began work for the captioned employer on July 3, 2003. He was employed full-time as a maintenance technician earning $500.00 each week. His supervisor was Arguest Knipp. The claimant typically worked Monday through Friday. His last day of work was June 8, 2006.

Mr. Knipp discharged the claimant on June 8, 2006, for failing to follow his instructions to perform certain work. The claimant received a written warning on February 6, 2006, that documented numerous maintenance items in the five (5) stores the claimant was responsible for that had not been addressed in a timely or acceptable manner. The claimant was then instructed to perform the maintenance, by Mr. Knipp, and he was told that any failure to perform his job duties could result in disciplinary action up to and including termination. During site surveys performed by Mr. Knipp near the beginning of April 2006, several items were reported to the claimant that needed to be repaired or replaced. Specifically, on April 6, 2006, the claimant was advised that broken floor tiles in the Coal Run store needed to be replaced. As of June 8, 2006, the date of the claimant's termination, these tiles were still not replaced. On this particular survey, the claimant was instructed to repair a hole in the top of the sink in the men's room, as of the date of the claimant's termination, this repair had not been performed according to the employer. Further, ice continued to build up inside the freezer at the Coal Run store. The claimant was advised on April 6, 2006, that this needed to be repaired. The claimant ordered a part to correct this problem and was awaiting delivery of the part. Also, on April 6, 2006, the claimant was advised of three (3) specific items that needed to be addressed at the Pikeville store. As of June 8, 2006, none of these items had been corrected. The claimant had been instructed on April 6, 2006, to check the batteries and to get all of the emergency lights operational in the Coal Run, Pikeville and Jackson stores. This had not been completed as of June 8, 2006.

. . . .

## REASONS

The employer trying to show a disqualification under KRS 341.370 must bear the burden of proof by a preponderance of credible evidence. See *Brown Hotel Company v. Edwards,* Ky., 365 S.W.2d 299 (1962).

In this case, there is conflicting testimony regarding whether the work claimant was instructed to perform had been completed. Claimant testified that he performed most of the work but some was incomplete because necessary parts had been ordered. The employer testified that, except for an acknowledge-

ment that some items could require the ordering of parts, the instructions had not been followed and the work was not yet done. The employer provided documentation and electronic mail messages corroborating that he had instructed claimant to perform items of work and that the work was not done. Because the employer made contemporaneous notations and documented the work to be performed, its account is accepted as being more credible.

Claimant did not follow the instructions of the employer. The instructions to perform work were within the duties of claimant and were reasonable. Claimant's behavior constitutes statutory misconduct and he is disqualified from receiving benefits.

Finally, Holbrook filed a Petition for Judicial Review with the Perry Circuit Court, arguing that the Commission acted without or in excess of its powers, that the Commission's findings of fact were not supported by substantial evidence, and that the order and decision below constituted an abuse of discretion and were not in conformity with KRS Chapter 341 and the accompanying regulations. The circuit court affirmed the Commission's order on July 18, 2007, stating, in relevant part, as follows:

> The Commission's decision is supported by substantial evidence in the record and [ ] the Commission correctly applied KRS 341.370(6) "Discharge for misconduct" to determine that the Plaintiff/Appellant had refused to obey reasonable instructions of his employer. The certified administrative record reflects that Mr. Holbrook did not refuse to perform merely one or two items of maintenance, but several enumerated items over an extended period of weeks, and in some instances, months. As the Commission is the trier of fact, having

authority to weigh the evidence and credibility of the witnesses, this Court cannot substitute its judgment for that of the Commission.

This appeal followed.

■ In his brief, Holbrook contends that the Commission's finding that he failed to obey reasonable instructions is not supported by substantial evidence and that the Commission misapplied the law defining misconduct. However, based upon our review of the record and the applicable statutory and caselaw, we agree with both the Commission and Tri–State Food and hold that the decision was supported by substantial evidence and that the Commission correctly applied the law to the facts.

In *Burch v. Taylor Drug Store, Inc.,* 965 S.W.2d 830, 834 (Ky.App.1998), this Court set out the applicable standard of review in administrative appeals as follows:

> Judicial review of the acts of an administrative agency is concerned with the question of arbitrariness. The findings of fact of an administrative agency which are supported by substantial evidence of probative value must be accepted as binding by the reviewing court. The court may not substitute its opinion as to the weight of the evidence given by the Commission. Upon determining that the Commission's findings were supported by substantial evidence, the court's review is then limited to determining whether the Commission applied the correct rule of law. [Citations omitted.]

With this standard in mind, we shall review the decision below.

Holbrook first argues that the Commission's findings were not supported by substantial evidence of record. "Substantial evidence is defined as evidence, taken alone or in light of all the evidence, that

has sufficient probative value to induce conviction in the minds of reasonable people." *Thompson v. Kentucky Unemployment Ins. Com'n,* 85 S.W.3d 621, 624 (Ky.App.2002). The Commission's findings of fact regarding Holbrook's poor work performance are amply supported by the introduction of Tri–State Food's documentary evidence as well as by Knipp's testimony at the hearing.

Holbrook next argues that the Commission misapplied the law to the facts of this case. Our decision turns on the application of KRS 341.370, which provides, in relevant part, as follows:

> (1) A worker shall be disqualified from receiving benefits for the duration of any period of unemployment with respect to which:
>
> . . . .
>
> (b) He has been discharged for misconduct or dishonesty connected with his most recent work[.]

In reaching our decision, we recognize our prior holding in *Shamrock Coal Co. v. Taylor,* 697 S.W.2d 952, 954 (Ky.App. 1985), in which we stated:

> [A] misconduct allegation is in the nature of an affirmative defense to an employee's claim for benefits under the chapter, and although the employee bears the overall burden of proof and persuasion, the employer has the burden of proving misconduct.

We also recognize that "[t]he underlying principle of the statutory scheme for unemployment compensation evinces a humanitarian spirit and it should be so construed." *Alliant Health System v. Kentucky Unemployment Ins. Com'n,* 912 S.W.2d 452, 454 (Ky.App.1995). This Court has observed that employers are entitled to faithful and obedient service from their employees. *Shamrock Coal Co.,* 697 S.W.2d at 954; *City of Lancaster v. Trumbo,* 660 S.W.2d 954, 956 (Ky.

App.1983). In *Trumbo,* the Court stated, "[w]here an employee manifests an intent to disobey the reasonable instructions of his employer, the denial of unemployment compensation benefits on the basis of misconduct is proper." *Id.*

■ While KRS 341.370(6) does not actually define "discharge for misconduct," it describes the term as including, but not being limited to:

> [S]eparation initiated by an employer for falsification of an employment application to obtain employment through subterfuge; knowing violation of a reasonable and uniformly enforced rule of an employer; unsatisfactory attendance if the worker cannot show good cause for absences or tardiness; damaging the employer's property through gross negligence; *refusing to obey reasonable instructions;* reporting to work under the influence of alcohol or drugs or consuming alcohol or drugs on employer's premises during working hours; conduct endangering safety of self or co-workers; and incarceration in jail following conviction of a misdemeanor or felony by a court of competent jurisdiction, which results in missing at least five (5) days work.

(Emphasis added.) In situations where there is no specific definition provided in the statute, Kentucky law instructs that "words of a statute shall be construed according to their common and approved usage. . . . In addition, the courts have a duty to accord statutory language its literal meaning unless to do so would lead to an absurd or wholly unreasonable result." *Kentucky Unemployment Ins. Com'n v. Jones,* 809 S.W.2d 715, 716 (Ky.App.1991).

In *Kentucky Unemployment Ins. Com'n v. King,* 657 S.W.2d 250, 251 (Ky.App. 1983), this Court cited to 76 Am.Jur.2d *Unemployment Compensation* § 52 to de-

fine "misconduct" sufficient to disqualify a worker from receiving benefits as follows: " 'an act of wanton or wilful disregard of the employer's interest, a deliberate violation of the employer's rules' would support exclusion from benefits whereas 'mere mistakes, inefficiency, [or] unsatisfactory conduct' would not.' " (Emphasis in original omitted.) We have also looked to Black's Law Dictionary for the definitions of wanton and wantonness. The term "wanton" is defined as "[u]nreasonably or maliciously risking harm while being utterly indifferent to the consequences." BLACK'S LAW DICTIONARY 1613 (8th ed.2004). The term "wantonness" is defined as "[c]onduct indicating that the actor is aware of the risks but indifferent to the results." *Id.* at 1614.

■ More specifically, this Court addressed the term "misconduct" in *Douthitt v. Kentucky Unemployment Insurance Com'n,* 676 S.W.2d 472, 474 (Ky.App.1984). We noted that KRS 341.370(6) defines that term "approximately the same way as it is defined" in *Boynton Cab Co. v. Neubeck,* 237 Wis. 249, 296 N.W. 636 (1941), and that *Boynton's* principle had been followed in Kentucky. In *Boynton,* the Wisconsin court defined the "intended meaning" of "misconduct" as:

> [L]imited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere

inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed "misconduct" within the meaning of the statute.

*Id.* at 640. Furthermore, we have found helpful the definition of "insubordination," which coincides with *Boynton's* discussion of misconduct: "A willful disregard of an employer's instructions, esp. behavior that gives the employer cause to terminate a worker's employment." BLACK'S LAW DICTIONARY 814 (8th ed.2004).

■ Again, we agree with the Commission and Tri–State Food that Holbrook's actions did not represent mere inefficiency or unsatisfactory conduct. Rather, we hold that his actions instead represented a refusal[3] to perform his work as ordered over a lengthy period. Our review of the caselaw convinces us that a "refusal" may arise from one's actual verbal rejection or, more typically, by one's careless or unreasonable disregard or ignoring of an employer's reasonable instructions. Accordingly, we hold that the Commission did not misapply the law when it found that Holbrook had been discharged for misconduct.

Our holding in the present case is supported by the evidence of record, including Knipp's notes regarding his follow-up site inspections from June 8, 2006, which we shall set out below. The first note addresses his inspection of the Coal Run location:

1. Hole in sink in men's room *still* not plugged.

2. Ice *still* building up in freezer. Freezing up at doorway to freezer creating a hazardous condition.

---

**3.** Black's Law Dictionary defines "refusal" as "[t]he denial or rejection of something offered or demanded." At 1307.

3. Broken floor tiles at fryers *still* not repaired.

4. Hot well on buffet not repaired.

5. Collectamatic fryer hose *still* not replaced. Hazardous condition.

6. Upright freezer not working properly.

7. Plastic lines for bunn machine *still* not run. (To prevent from leaking)

8. Handicapp [sic] sign *still* missing from side of building.

9. Emergency lights *still* not working at main entrance.

(Emphasis added.) The next note addresses Knipp's follow-up visit to the Pikeville location:

1. Freezer frosting over? *Still Frosting over*

2. Loose floor drain at breading table repaired? *Yes*

3. Broken floor tiles in kitchen repaired? *No*

4. Emergency lights—batteries changed? *No*

Send wrong door back—not necessary according to Curt. Was damaged by freight company[.]

The final note addresses Knipp's visit to the Jackson location:

1. It was very difficult to open the door to enter the store. This was due to the hood system not working. I was told by the managers that some customers had thought the store was closed due to this. Curt had removed parts from the hood system and taken them to Doug Menix at Breathitt Mechanical. He told Sandy, the RGM, that parts were ordered. I checked with Menix and he told me that he had not been able to locate parts for the hood system. Curt had left the store in this condition. He had not notified me of this nor had he asked Rick or Kevin for advise [sic] on how to take care of the problem. This

situation had been in existence for approximately a week.

The following day I sent Rick to the store and he was able to perform repairs to get the hood system operational.

2. There was a constant water leak at a sink that was causing the floor in the kitchen to remain wet and slippery. The situation had existed for sometime [sic] with Curt's knowledge and he had taken no action to repair it.

The numerous maintenance logs, counseling notes, and messages contained in the record document Holbrook's careless and unreasonable failure to perform his job duties, as instructed, over a period approaching a year. Furthermore, testimony established that Tri–State Food's two other maintenance technicians were responsible for more locations and were able to complete Holbrook's unfinished tasks. These documents, coupled with the testimony, do not establish mere inefficiency, but rather demonstrate Holbrook's disregard of and unspoken refusal to complete his reasonable job assignments and instructions of his employer.

For the foregoing reasons, the order of the Perry Circuit Court is affirmed.

COMBS, Chief Judge, Concurs.

GRAVES, Senior Judge, Dissents and Files Separate Opinion.

GRAVES, Senior Judge, dissenting.

Respectfully, I dissent. The proof does not disclose that failure to perform work was intentional, willful, wanton, or grossly negligent.

Because unemployment compensation law is remedial humanitarian legislation, the standards for denying unemployment benefits to a discharged employee following termination are stringent. They require a malicious intent and deliberate ac-

tions, on the part of the employee, to harm the business interests of the employer. The Appellant's mere failure to satisfactorily perform his job duties, while justifying the employer's decision to terminate his employment, does not rise to the level of "misconduct" for purposes of determining eligibility for unemployment insurance pursuant to KRS 341.370(1)(b), and the Appellee has offered no proof of the malicious intent required for denial of unemployment benefits.

Since negligence in job performance does not constitute misconduct, the facts of this case do not support a finding of misconduct.