**COMMONWEALTH of Kentucky, Appellant,**

v.

**Tina RHODES, Appellee.**

No. 2009–CA–000336–DG.

Court of Appeals of Kentucky.

April 2, 2010.

Jack Conway, Attorney General, John Hayne, Assistant Attorney General, Frankfort, KY, for appellant.

John Cornett, Georgetown, KY, for appellee.

Before LAMBERT and STUMBO,

Judges; WHITE,[1] Senior Judge.

## OPINION

LAMBERT, Judge.

Tina Rhodes was arrested and charged with driving under the influence. On October 27, 2008, the Fayette District Court ruled that Rhodes' conduct on the night of her arrest amounted to a refusal to submit to an intoxilyzer examination. Subsequently, the Fayette Circuit Court reversed the District Court's ruling and held that Rhodes' conduct did not amount to a refusal to submit to the exam. After careful review, we agree with the Fayette Circuit Court and affirm.

On September 13, 2008, Rhodes' vehicle was stopped by Officer Felinski. After determining that there was probable cause to believe that Rhodes was driving under the influence (DUI) of alcohol, Officer Felinski placed her under arrest. While Officer Felinski was trying to place Rhodes in the back of the police cruiser, she became combative, saying she did not want to wear the seat belt, etc. At one point, another officer, Officer Bradley, had to intervene in order to assist Officer Felinski in placing Rhodes in the back of the police cruiser. She was then transported to the Fayette County Detention Center.

Officer Felinski escorted Rhodes into the intoxilyzer room with Officer Bradley following closely behind. Once inside the intoxilyzer room, Rhodes "started getting belligerent again, stating 'I'm not going to be in here with him. You don't have to make me be in here with him.'" Rhodes broke loose from Officer Felinski's hands and went out into the officer's work area. Officers Felinski and Bradley then made an attempt to escort Rhodes back into the intoxilyzer room. According to the officers, Rhodes was refusing to walk and was placing all her weight on the officer's hands. Once inside the intoxilyzer room, the officers tried to place Rhodes in a chair, but she was continuing to be combative. At this point, a third officer had to come in to help restrain Rhodes.

Officer Felinski testified that it was impossible for him to complete a reading of the implied consent warning to Rhodes despite trying on multiple occasions. He further testified that he "felt" like Rhodes would refuse to submit to the intoxilyzer testing, although he never made such a request.

On October 27, 2008, the Fayette District Court conducted a refusal hearing and ruled that Rhodes refused to submit to an intoxilyzer exam. Rhodes appealed this ruling to the Fayette Circuit Court, arguing that she was not read the implied consent form in its entirety and therefore was never specifically asked to submit to the intoxilyzer exam. Rhodes argued that there cannot be a refusal to submit to an intoxilyzer exam if there is not a request to submit to such exam.

On January 23, 2009, the Fayette Circuit Court issued its opinion reversing the decision of the district court and ruling that Rhodes did not refuse to submit to the exam because no request was made by the officers to conduct such an exam. This appeal now follows.

■ On appeal, the Commonwealth argues that despite the language of KRS 189A.105(2)(a), the officers acted appropriately given the circumstances and correctly determined that Rhodes refused to take the intoxilyzer exam. Essentially, the Commonwealth asks this Court to make an

---

1. Senior Judge Edwin White sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

exception for officers being required to read the implied consent warning to arrestees when they are unruly or belligerent. Because the statutory language is abundantly clear that police officers must read the implied consent to arrestees, we affirm the ruling of the Fayette Circuit Court.

KRS 189A.105(2)(a) states:

At the time a breath, blood, or urine test is requested, the person *shall* be informed:

1. That, if the person refuses to submit to such tests, the fact of this refusal may be used against him in court as evidence of violating KRS 189A.010 and will result in revocation of his driver's license, and if the person refuses to submit to the tests and is subsequently convicted of violating KRS 189A.010(1) then he will be subject to a mandatory minimum jail sentence which is twice as long as the mandatory minimum jail sentence imposed if he submits to the tests, and that if the person refuses to submit to the tests he will be unable to obtain a hardship license; and

2. That, if a test is taken, the results of the test may be used against him in court as evidence of violating KRS 189A.010(1), and that if the results of the test are 0.18 or above and the person is subsequently convicted of violating KRS 189A.010(1), then he will be subject to a sentence that is twice as long as the mandatory minimum jail sentence imposed if the results are less than 0.18; and

3. That if the person first submits to the requested alcohol and substance tests, the person has the right to have a test or tests of his blood performed by a person of his choosing described in KRS 189A.103 within a reasonable time of his arrest at the expense of the person arrested.

(Emphasis added). Further, KRS 189A.105(3) states:

During the period immediately preceding the administration of any test, the person shall be afforded an opportunity of at least ten (10) minutes but not more than fifteen (15) minutes to attempt to contact and communicate with an attorney and shall be informed of this right. Inability to communicate with an attorney during this period shall not be deemed to relieve the person of his obligation to submit to the tests and the penalties specified by KRS 189A.010 and 189A.107 shall remain applicable to the person upon refusal. Nothing in this section shall be deemed to create a right to have an attorney present during the administration of the tests, but the person's attorney may be present if the attorney can physically appear at the location where the test is to be administered within the time period established in this section.

As set forth in the above provisions, the implied consent warning is an integral part of the DUI statutes. It informs defendants of important rights and duties that are involved in such cases, as well as the consequences of their particular actions. The legislature has recognized the importance of the implied consent warning by the use of the mandatory language "shall." While reading the implied consent warning to the defendant is mandatory, there is no statutory requirement that the defendants understand or acknowledge the reading of the implied consent warning. The statute merely requires that the officer read the implied consent warning.

The Commonwealth asks this Court to substitute the legislature's mandatory language with its own permissive language. We decline to do so in light of the clear language utilized in the statute that this warning shall be read to all arres-

tees or defendants. "[T]he courts have a duty to accord statutory language its literal meaning unless to do so would lead to an absurd or wholly unreasonable result." *Holbrook v. Kentucky Unemployment Ins. Com'n*, 290 S.W.3d 81, 86 (Ky.App.2009) (quoting *Kentucky Unemployment Ins. Com'n v. Jones*, 809 S.W.2d 715, 716 (Ky. App.1991)).

A review of the evidence in this case indicates that although Rhodes was belligerent, the officers could have still read the warning to her. Nothing requires that Rhodes listen to the warning, instead only that the officers read it to her. Only once the warning is read can Rhodes then be deemed to have impliedly or explicitly refused. *See Cook v. Commonwealth*, 129 S.W.3d 351, 360 (Ky.2004) ("In order for there to be a refusal, there must first be a specific request that the person take the test, not just an inquiry whether the person would like to take it.") (Internal citation omitted).

In defending the decision not to read the implied consent warning to Rhodes, Officer Felinski stated that given Rhodes' conduct, he feared for his safety and that of the other officers. While we certainly sympathize with the officers and understand that their safety is of utmost importance, Rhodes was in handcuffs with three officers present, and we do not see how reading a warning to a handcuffed defendant would put the officers at any further risk. The officer's argument that they could not have read the implied consent warning to Rhodes, who was handcuffed, is without merit.

Based on the foregoing, we affirm the January 23, 2009, order of the Fayette Circuit Court reversing the Fayette District Court's ruling that Rhodes refused to submit to the intoxilyzer exam. Given that Rhodes was never presented with the implied consent warning, she simply could not have refused to submit to the exam.

ALL CONCUR.