COMMONWEALTH of Kentucky,
Appellant

v.

Christopher DUNCAN, Appellee

2013–SC–000742–DG

Supreme Court of Kentucky.

RENDERED: MAY 14, 2015

Rehearing Denied September 24, 2015

Counsel for Appellant: Jack Conway, Attorney General of Kentucky, Jeffrey Allan Cross, Assistant Attorney General

Counsel for Appellee: Amealia R. Zachary

## OPINION OF THE COURT BY JUSTICE CUNNINGHAM

During the afternoon of March 31, 2007, Appellee, Christopher Duncan was stopped by Sergeant Brent McDowell of the Providence Police Department for operating his motor vehicle without the use of a seatbelt and for crossing the center lane of traffic. Appellee smelled strongly of alcohol, had bloodshot eyes, and admitted to drinking three beers prior to driving. Sergeant McDowell conducted a series of field sobriety tests, all of which Appellee failed. Sergeant McDowell also administered a Portable Breathalyzer Test ("PBT") which detected the presence of alcohol on Appellee's breath. As a result, Sergeant McDowell placed Appellee under arrest. In an effort to ascertain Appellee's Blood Alcohol Concentration level ("BAC"), Sergeant McDowell asked Appellee if he would submit to a blood test. Appellee refused to consent and instead requested that Sergeant McDowell utilize a breathalyzer test to ascertain his BAC.[1] Sergeant McDo-

well declined Appellee's request and transported Appellee to the Webster County Jail.

Appellee was subsequently charged with driving under the influence ("DUI") of alcohol, third offense. On October 23, 2007, Appellee filed a motion with the Webster District Court seeking to dismiss the DUI charge. As grounds for his motion, Appellee claimed that Sergeant McDowell violated Kentucky Revised Statute ("KRS") 189A.103 by requesting his permission to administer a blood test prior to administering a breathalyzer test. In support of his argument that breathalyzer testing is the preferred testing method, Appellee noted that the extraction of his blood is considered a seizure within the meaning of the Fourth Amendment, and, therefore could not have been tested absent his consent or Sergeant McDowell's attainment of a warrant. Furthermore, Appellee claimed that if he was provided a breathalyzer test, as he requested, the results would have exonerated him from the charge.

The Webster District Court denied Appellee's motion to dismiss by order dated February 26, 2008. The district court cited KRS 189A.103(1), known as Kentucky's Implied Consent law, and *Beach v. Commonwealth*, 927 S.W.2d 826 (Ky.1996) and concluded that Sergeant McDowell had "the option as to which test may be given in a DUI case."[2] Additionally, the district

---

1. A PBT and a breathalyzer test are both instruments that determine the level of alcohol concentration in an individual's blood. A PBT is a handheld device that is administered roadside and used to detect the presence of alcohol on a driver's breath. A breathalyzer test, also known as an intoxilyzer, is a stationary machine, usually housed at the local jail, that is more accurate at uncovering a driver's BAC.

2. The Webster District Court Order also held that "a blood test in DUI cases does not violate the 4th Amendment, the 5th Amendment, the 6th Amendment nor the Due Process Clause of the United States Constitution." The Webster Circuit Court also addressed these constitutional issues by affirming the district court's order. However, at no point did Appellee argue that his constitutional rights were violated. Appellee only claims that the Fourth Amendment right to be free from unreasonable search

court declared that Sergeant McDowell was free to request a breathalyzer, urine, or blood test in any order, and in any combination he so desired. Appellee appealed to the Webster Circuit Court, who affirmed the district court's order. Appellee sought further review, which the Court of Appeals denied because it believed the case was not ripe for review since Appellee had not been found guilty of committing any crime.

On July 10, 2010, Appellee pled guilty to the amended charge of DUI, second offense. As a condition of Appellee's plea, he reserved the right to appeal the issue of whether Sergeant McDowell violated Kentucky's Implied Consent law by denying him a breathalyzer test and instead requesting a blood test. Accordingly, Appellee once again began the appeals process. The Court of Appeals subsequently accepted Appellee's motion for discretionary review and on April 19, 2013, issued its order affirming the circuit court's denial of Appellee's motion to dismiss. *Duncan v. Commonwealth*, 2011–CA–000636 (Ky. App. April 19, 2013). Like the courts below it, the Court of Appeals ruled that nothing in Kentucky's Implied Consent law prevents an officer, who is investigating an alcohol-related DUI, from using a blood test as the initial BAC testing method. In formulating its decision, the Court of Appeals relied on the plain language of KRS 189A.103 and *Beach*, 927 S.W.2d 826.

On April 17, 2013, a mere two days before the Court of Appeals issued the above-referenced opinion, the U.S. Supreme Court rendered its opinion in *Missouri v. McNeely*, —— U.S. ——, 133 S.Ct. 1552, 185 L.Ed.2d 696 (2013). Appellee, believing that *McNeely* overturned *Beach*

and mandated the reversal of the district and circuit courts' rulings, filed a petition requesting that the Court of Appeals reconsider its opinion. On July 19, 2013, the Court of Appeals granted Appellee's petition and withdrew its April 19, 2013, opinion affirming the denial of Appellee's motion to dismiss. In its place, the Court of Appeals issued a new opinion which reversed the circuit court's holding and remanded the case back to the district court. Without explanation, the Court of Appeals reasoned that *McNeely* was not only controlling, but applicable to the issue before the court. The Commonwealth sought discretionary review with this Court, which we subsequently granted.

The facts of this case are not in contention and the only inquiry before the Court is one of statutory interpretation. Consequently, this Court will conduct a *de novo* review. *Artrip v. Noe*, 311 S.W.3d 229, 231 (Ky.2010).

Appellee was charged with operating a motor vehicle under the influence of alcohol as proscribed in KRS 189A.010(1)(a). The elements of this crime are described as follows:

(1) person shall not operate or be in physical control of a motor vehicle anywhere in this state:

(a) Having an alcohol concentration of 0.08 or more as measured by a scientifically reliable test or tests of a sample of the person's breath or blood taken within two (2) hours of cessation of operation or physical control of a motor vehicle;

*Id.* The General Assembly enacted Kentucky's Implied Consent law, found in KRS 189A.103(1), which provides that by virtue

---

and seizures applies to blood testing in DUI investigations, a claim that the Commonwealth does not contest. Consequently, this Court will not address the lower courts' rul-

ings in regards to the constitutional issues that were not only unpreserved, but also not raised by Appellee.

of driving on Kentucky's roadways, a motor vehicle operator implicitly consents to the testing of his or her breath, blood, and urine for the purpose of determining the individual's BAC. Of course, Kentucky's Implied Consent law is not absolute. The driver has the freedom to refuse to submit to any form of testing. *See* KRS 189A.104. However, refusal to submit to testing can result in the immediate suspension of the driver's license and a double minimum jail sentence. *See* KRS 189A.105(1) and (2)(a)(1). Moreover, such refusal can be used in court as proof of the driver's guilt. *See id.*

With this statutory framework in mind, we will turn our attention to the particular statute at issue, KRS 189A.103. As with any statutory interpretation, this Court must begin its analysis by looking at the statute's plain wording, which in KRS 189A.103 is as follows:

> The following provisions shall apply to any person who operates or is in physical control of a motor vehicle or a vehicle that is not a motor vehicle in this Commonwealth:
>
> (1) He or she has given his or her consent to one (1) or more tests of his or her blood, breath, and urine, or combination thereof, for the purpose of determining alcohol concentration or presence of a substance which may impair one's driving ability, if an officer has reasonable grounds to believe that a violation of KRS 189A.010(1) or 189.520(1) has occurred;

■ From this language, the Court garners that once law enforcement has reasonable cause to believe that a driver is operating a motor vehicle under the influ-

ence of drugs or alcohol, that officer may utilize a breath, blood, or urine test, or a combination thereof, in order to uncover the driver's BAC. The statute does not declare that a specific testing order is to be followed, nor does it state that a breath test is the primary or preferred method of ascertaining the driver's BAC. Indeed, we can find no explicit or implicit directive from the General Assembly requiring law enforcement to administer a breathalyzer test first, prior to proceeding with blood testing. Furthermore, this statute in no way bestows power upon the driver to *dictate to law enforcement which test to administer First.* As a result, we must conclude that Sergeant McDowell was under no statutory obligation to provide Appellee with a breathalyzer test prior to requesting that he submit to a blood test. And, while Appellee was certainly free to express an opinion as to his testing preference, Sergeant McDowell was the individual with statutory authority to determine which of the three tests to utilize.[3]

■ Moving beyond the implied consent portion of KRS 189A.103, Appellee maintains that Subsection (5) demonstrates that breath testing is to be the initial testing procedure. The wording of KRS 189A.103(5) is as follows:

> When the preliminary breath test, breath test, or other evidence gives the peace officer reasonable grounds to believe there is impairment by a substance *which is not subject to testing by a breath test,* then blood or urine tests, or both, may be required in addition to a breath test, or in lieu of a breath test;

(Emphasis added). Appellee believes this language proves that law enforcement

---

**3.** Notably, Appellee would have been entitled to a breathalyzer test had he first succumbed to Sergeant McDowell's request for a blood test. *See* KRS 189A.103(7) ("After the person has submitted to all alcohol concentration

tests and substance tests requested by the officer, the person tested shall be permitted to have a person listed in subsection (6) of this section of his or her own choosing administer a test or tests ....").

does not enjoy unfettered discretion when determining which of the three tests to administer first. We disagree. It is abundantly clear to this Court that Subsection (5) only applies to situations wherein the driver is suspected of driving under the influence of substances that are not detectable by a breath test, *e.g.*, drugs such as controlled substances or prescription medications, not alcohol. In those investigations, preliminary testing, such as a PBT, would be insufficient in detecting the presence of drugs. For that reason, the officer would be without "reasonable grounds" to believe that the driver was operating his or her vehicle under the influence of drugs, which in turn would prevent the officer from obtaining additional blood or urine testing. *See* KRS 189.103(1). Consequently, we believe Subsection (5) merely provides law enforcement with the authority needed to seek blood or urine testing when investigating an individual suspected of driving under the influence of a substance undetectable via breath testing.

Our interpretation of KRS 189A.103(1) and (5) reinforces the notion that the General Assembly intended on providing law enforcement with wide discretion in determining which test to employ as the facts of any particular case may so require.

Our holding today is not only supported by the plain language of KRS 189A.103, but also by our previous holding in *Beach*, 927 S.W.2d 826. While the facts of *Beach* involved a blood test that the defendant consented to taking, the issue before our predecessor Court was the same—does Kentucky's Implied Consent law require law enforcement to seek a breathalyzer test before a blood test? In *Beach*, the defendant was being investigated for an alcohol-related DUI after running over an embankment. *Id.* at 827. The defendant was taken to a hospital for a blood test after failing a PBT and several field sobri-

ety tests. *Id.* Even though the defendant consented to taking the blood test, she subsequently sought to suppress the test results on the grounds that the investigating officer violated KRS 189A.103(1) by not offering a breathalyzer test first. *Id.* The Court relied on the plain language of Kentucky's Implied Consent law and determined that the statute "do[es] not require that a police officer must first offer a DUI suspect a breath test before asking him or her to submit to a blood test." *Id.* at 828. Likewise, the Court rejected the argument that Subsection (5) somehow limits an officer's authority to administer a blood test prior to a breath test. *Id.*

Our discussion of *Beach* now brings us to the Court of Appeals' opinions in the case presently before us. As mentioned, the Court of Appeals' first opinion affirmed the circuit court's denial of Appellee's motion to dismiss. However, the Court of Appeals withdrew its opinion and rendered a new opinion based entirely on the U.S. Supreme Court case *McNeely*, 133 S.Ct. 1552. The Court of Appeals provided minimal analysis in finding not only that *McNeely* somehow affected its prior reliance on *Beach*, but that it also required reversal of the Webster Circuit Court's Order. In order to properly demonstrate the Court of Appeals' misapplication of *McNeely*, we must first explain the law leading up to its rendition.

The constitutionality of blood testing in DUI investigations was first discussed in the U.S. Supreme Court case *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). In that case, the defendant was involved in a car accident while driving under the influence of alcohol. *Id.* at 758, 86 S.Ct. 1826. He was later taken to a hospital where a blood test was administered. *Id.* The defendant argued that the blood test results were inadmissible because his blood was obtained

without his consent. *Id.* at 759, 86 S.Ct. 1826. The defendant thusly argued that the nonconsensual procurement of his blood denied him due process of law, his privilege against self-incrimination, his right to counsel, and constituted an unreasonable search and seizure. *Id.* For reasons not relevant to our analysis, the Court swiftly disposed of the defendant's first three constitutional arguments. *Id.* at 759–72, 86 S.Ct. 1826. However, the Court provided a significant Fourth Amendment analysis. *Id.* at 766–72, 86 S.Ct. 1826.

To begin, the Court declared that blood "testing procedures plainly constitute searches of 'persons,' and depend antecedently upon seizures of 'persons,' within the meaning of th[e] [Fourth] Amendment." *Id.* at 767, 86 S.Ct. 1826. Accordingly, a warrant or an exception to the warrant requirement is required to be shown in order for the testing of blood to be constitutionally permissible. *Id.* However, the Court believed that the exigency exception was applicable to these types of situations. More specifically, the Court reasoned that the destruction of evidence—the natural dissipation of the defendant's BAC level—was imminent considering that "the percentage of alcohol in the blood begins to diminish shortly after drinking stops, as the body functions to eliminate it from the system." *Id.* at 770, 86 S.Ct. 1826. The *Schmerber* Court, however, warned that its holding was case specific, and that for the exigency exception to apply in future cases, there must be a more significant delay between the suspect's consumption of alcohol and the procurement of the suspect's blood. *Id.*

Despite the Supreme Court's warning that the exigency exception is case specific, many post-*Schmerber* courts categorically applied the exception once the following three elements were shown: (1) the officers had probable cause to arrest the suspect, (2) the natural metabolization of alcohol in the suspect's blood had taken place, and (3) a reasonable method of extraction was used in obtaining the blood sample. *Id.* It is from this legal landscape that *McNeely*, 133 S.Ct. 1552 arose.

In *McNeely*, the defendant was pulled over by law enforcement for suspicion of DUI. *Id.* at 1556. The investigating officer noticed that the defendant had slurred speech, bloodshot eyes, and smelled of alcohol. *Id.* When questioned, the defendant admitted to consuming a couple of beers at a bar. *Id.* The defendant refused to submit to a PBT and was then arrested. *Id.* at 1556–57. While in route to the police station, the defendant stated that he would not submit to a breathalyzer test. *Id.* at 1557. As a result, the officer changed course and transported the defendant to a local hospital. *Id.* Unsurprisingly, the defendant also refused to consent to a blood test once at the hospital. *Id.* The officer did not seek a warrant and instead instructed the lab technician to procure a blood sample to test. *Id.* The blood test results showed that the defendant's BAC was well above the legal limit. *Id.* The defendant sought suppression of the blood test results, arguing that exigent circumstances did not exist. *Id.* The trial court agreed and concluded that the officer had sufficient time to secure a warrant. *Id.*

The State of Missouri argued that *Schmerber* created a *per se* exigency in alcohol related DUI investigations, which justified the warrantless testing of the suspect's blood. *Id.* at 1560. The exigent circumstance is that alcohol naturally dissipates in the bloodstream over time. *Id.* The Supreme Court disagreed and explained that exigent circumstances do not exist in every drunk driving investigation simply because "BAC evidence is inherently evanescent." *Id.* Instead, the Court

held, there must be additional circumstances demonstrating an emergency. *Id.* at 1561. For example, in *Schmerber*, an exigency was found because the blood test was delayed by the officer's investigation of the accident, in addition to the extra time needed to transport the suspect to the hospital for his injuries. *Id.* at 1569. In *McNeely*, however, there was no such delay. The traffic stop was routine and, other than the normal dissipation of alcohol in the blood stream, there was no emergency justifying an immediate draw of the defendant's blood. *Id.* at 1556–57.

*McNeely* essentially halted the common misapplication of *Schmerber*—that the mere presence of alcohol in a suspect's blood created a *per se* exigent circumstance justifying the administration of a warrantless blood test. *Id* at 1560. In any event, *McNeely* did not overturn *Schmerber*, it clarified it. *Id.* ("[O]ur analysis in *Schmerber* fits comfortably within our case law applying the exigent circumstances exception."). After *McNeely*, law enforcement officers were no longer categorically permitted to obtain a suspect's blood sample without a warrant simply because the alcohol was leaving the suspect's blood stream. We should note, however, that the applicability of *McNeely* in the situation before us is questionable, as this Court has found the issuance of a warrant to be improper where neither death nor physical injury results. *Combs v. Commonwealth*, 965 S.W.2d 161 (Ky. 1998) (interpreting KRS 189A.105(2)(b)).

Nonetheless, having reviewed *McNeely* and its progeny, this Court can confidently conclude that the Court of Appeals erred in applying *McNeely* to Appellee's case. In order for *McNeely* to have any applicability to this case, Appellee would have had to have been subject to an unreasonable search and seizure. However, Sergeant McDowell only requested that Appellee submit to a blood test. An actual blood test was never performed because Appellee refused to consent. Thusly, even if Appellee asserted a violation of his Fourth Amendment rights, which he does not, Appellee would lack the requisite standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) ("[T]he irreducible constitutional minimum of standing [requires] the plaintiff [to] have suffered an 'injury in fact'...."). Instead, we believe that the Court of Appeals' first opinion, dated April 13, 2013, was correct and it should not have been withdrawn.

■ In summation, this Court holds that when a law enforcement officer has reasonable grounds to believe that a driver is operating a motor vehicle under the influence of alcohol, that officer may request that the driver submit to a blood test in order to determine the driver's BAC. The officer is under no obligation to administer a breathalyzer test prior to the administration of the blood test. Our holding is supported by the plain language of KRS 189A. 103 and *Beach*, 927 S.W.2d 826.

For the forgoing reasons, we reverse the Court of Appeals' July 19, 2013, opinion and hereby reinstate the Webster County Circuit Court's order affirming the Webster District Court's denial of Appellee's motion to dismiss.

All sitting. Minton, C.J.; Barber, Keller, Noble, and Venters, JJ., concur. Abramson, J., concurs in result only.