RENDERED:  JULY 15, 2016; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2014-CA-001582-DG

G.G.                                                   APPELLANT


ON DISCRETIONARY REVIEW FROM FAYETTE CIRCUIT COURT
v.               HONORABLE PAMELA R. GOODWINE, JUDGE
ACTION NO. 14-XX-00015


COMMONWEALTH OF KENTUCKY                 APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  COMBS, J. LAMBERT, AND THOMPSON, JUDGES.

J. LAMBERT, JUDGE:  This Court granted discretionary review of the Fayette

Circuit Court's opinion and order affirming the Fayette District Court's judgment

convicting G.G. of driving under the influence.  The district court entered its

judgment pursuant to a guilty plea conditioned on G.G.'s right to appeal the order

denying a motion to suppress evidence because he was not given an opportunity to

take an independent blood test.  This issue before this Court addresses the interplay

between Kentucky Revised Statutes (KRS) 189A.103(7) and KRS 189A.105(4). Finding no error in the lower courts' rulings, we affirm.

As both parties state in their briefs to this Court, the facts of this case are generally undisputed and straight-forward. Officer E. Agayev of the Lexington Police Department arrested G.G. on suspected drunk driving charges on October 13, 2013, after G.G. ran his car into a ditch. Officer Agayev reported that G.G. appeared to be under the influence of alcohol and that he had slurred speech, was confused, and was unsteady on his feet. G.G. failed the field sobriety tests, and he admitted that he had consumed five or six Bourbon drinks. Officer Agayev filed a DUI arrest report listing the reason for the stop as follows:

> Listed vehicle was subject of ATL for reckless/drunk driving with comp [sic] following the vehicle. Listed vehicle was then observed by security staff at Link Belt driving recklessly on the property and then driving into the ditch. Upon arrival officers located the vehicle still running and driver inside. The driver was assisted out of the vheicle [sic] and out of the ditch. The driver had strong odor of alcoholic beverege [sic] on his person, was confused, had slurred speech and was extrenly unstebale [sic] on his feet.

The report then detailed that G.G. had refused to take a breathalyzer test, but had agreed to a blood test, and his blood was drawn for testing purposes at the Fayette County Detention Center.

G.G. filed a motion to suppress the blood test results, arguing that Officer Agayev did not offer him the opportunity to have an independent blood test

performed after he agreed to take the officer's blood test. The district court held a suppression hearing on March 21, 2014, and heard testimony from Officer Agayev. The officer testified he encountered G.G. on October 13, 2013, and charged him with operating a motor vehicle under the influence. He took G.G. to the Fayette County Detention Center, where he used a device to record his interactions with G.G.. Officer Agayev asked G.G. to take a breath test to determine his level of alcohol intoxication, but G.G. refused this request. However, G.G. stated that he would take a blood test. He was charged and booked after the test was completed. Prior to the test, Officer Agayev read the Implied Consent Agreement to G.G. and gave a copy to him. The document G.G. signed was introduced into the record. That document read as follow:

> I will be requesting that you submit to a test of your breath, blood, or urine, or any combination of these tests. If you refuse to submit to any test which I request, your refusal may be used against you in court as evidence of your violation of KRS 189A.010 (DUI) and your driver's license will be revoked. If you are convicted of KRS 189A.010 (DUI), your refusal will subject you to a mandatory minimum jail sentence which is twice as long as the mandatory minimum jail sentence that would be imposed if you submit to **all** requested tests. You will also be unable to obtain a hardship license if you refuse.
>
> . . . .
>
> If you submit to all of the tests which I request, you have the right to obtain a test or tests of your blood performed at your expense by a qualified person of your choosing within a reasonable time of your arrest.

(Emphasis in original.)  The form then included lines for G.G. to sign stating that he agreed or refused to submit to a particular test or tests.  His signatures indicated that he agreed to submit to a blood test, but that he refused to submit to the breath test.  Following the signature lines, the form continued as follows:

> Since you have submitted to all requested tests, you now have the right to have a test or tests of your blood, performed at your expense by a physician, registered nurse, phlebotomist, medical technician or medical technologist at the hospital of your choosing within a reasonable time of your arrest.  **DO YOU WANT SUCH A TEST**?

The signature lines below this paragraph were not completed.

The Commonwealth played portions of the officer's recording, which confirmed that G.G. refused his request to take a breath test and said he would take a blood test.  Officer Agayev stated that he gave G.G. another chance to take the breath test, but he again refused.  He permitted G.G. to take a blood test as he asked because he had been cooperating and respectful initially.  Officer Agayev testified that he did not allow G.G. to submit to an independent test because he was disqualified due to his failure to comply with the Implied Consent Agreement by refusing to take the breath test.  He explained this to G.G. as well.  G.G. said he understood that he did not have the option to take an independent blood test at his expense because he had not complied with the Implied Consent Warning.  On

-4-

cross-examination, Officer Agayev said he took G.G. to the nurse's station to request a blood test.

At the conclusion of the hearing, G.G. argued that Officer Agayev did not comply with the terms of KRS 189A.105(4) by offering him the opportunity to take an independent blood test after submitting to the blood test Officer Agayev requested. The Commonwealth contended that the officer acted appropriately pursuant to KRS 189A.103(7). In response, G.G. suggested that there was a conflict between the two statutes. The district court agreed with the Commonwealth's interpretation and held that G.G. did not have the right to an independent test because he had refused Officer Agayev's request that he submit to a breath test.

Following the suppression hearing, G.G. opted to enter a conditional guilty plea to DUI, first offense, and was sentenced to pay a fine and fees, serve four days, and had his license suspended. G.G. appealed the judgment to the circuit court, arguing that he should have been afforded the opportunity to submit to an independent blood test at his expense pursuant to KRS 189A.105(4) and 189A.103(7). The Commonwealth opposed G.G.'s argument. The circuit court affirmed the district court's ruling, holding that because G.G. did not submit to all of the tests the officer requested, he was not entitled to an independent blood test. This Court accepted discretionary review on G.G.'s motion.

On appeal, G.G. continues to argue that he should have been given the right to request an independent blood test pursuant to KRS 189A.105(4), while the Commonwealth contends that he waived that right when he refused the officer's request to submit to a breath test pursuant to KRS 189A.103(7). Because statutory interpretation is a question of law, we shall review this matter *de novo*. *Commonwealth v. Gamble*, 453 S.W.3d 716, 718 (Ky. 2015), *Cinelli v. Ward*, 997 S.W.2d 474, 476 (Ky. App. 1998).

"The primary purpose of judicial construction is to carry out the intent of the legislature. In construing a statute, the courts must consider the intended purpose of the statute-and the mischief intended to be remedied. A court may not interpret a statute at variance with its stated language." *Monumental Life Ins. Co. v. Dept. of Revenue*, 294 S.W.3d 10, 19 (Ky. App. 2008) (internal quotations omitted), *citing SmithKline Beecham Corp. v. Revenue Cabinet*, 40 S.W.3d 883, 885 (Ky. App. 2001). "The courts should reject a construction that is unreasonable and absurd, in preference for one that is reasonable, rational, sensible and intelligent[.]" *Monumental Life Ins. Co.*, 294 S.W.3d at 19 (internal quotations omitted), *citing Commonwealth v. Kerr*, 136 S.W.3d 783, 785 (Ky. App. 2004); *Commonwealth v. Kash*, 967 S.W.2d 37, 43–44 (Ky. App. 1997). "[T]he courts have a duty to accord statutory language its literal meaning unless to do so would lead to an absurd or wholly unreasonable result." *Commonwealth v. Rhodes*, 308

S.W.3d 720, 723 (Ky. App. 2010) (internal quotation marks omitted), *citing Holbrook v. Kentucky Unemployment Ins. Com'n*, 290 S.W.3d 81, 86 (Ky. App. 2009). "[S]tatutes must be given their literal interpretation unless they are ambiguous and if the words are not ambiguous, no statutory construction is required. We lend words of a statute their normal, ordinary, everyday meaning." *Stephenson v. Woodward*, 182 S.W.3d 162, 170 (Ky. 2005) (internal citations and quotation marks omitted), *citing Commonwealth v. Plowman*, 86 S.W.3d 47, 49 (Ky. 2002).

In *Commonwealth v. Duncan*, 483 S.W.3d 353, 355-56 (Ky. 2015), the Supreme Court explained Kentucky's Implied Consent law:

> The General Assembly enacted Kentucky's Implied Consent law, found in KRS 189A.103(1), which provides that by virtue of driving on Kentucky's roadways, a motor vehicle operator implicitly consents to the testing of his or her breath, blood, and urine for the purpose of determining the individual's BAC. Of course, Kentucky's Implied Consent law is not absolute. The driver has the freedom to refuse to submit to any form of testing. *See* KRS 189A.104. However, refusal to submit to testing can result in the immediate suspension of the driver's license and a double minimum jail sentence. *See* KRS 189A.105(1) and (2)(a)(1). Moreover, such refusal can be used in court as proof of the driver's guilt. *See id.*

We shall next set out the statutes applicable to our review. KRS 189A.103 provides for consent to test for alcohol or other substances and states in relevant part as follows:

The following provisions shall apply to any person who operates or is in physical control of a motor vehicle or a vehicle that is not a motor vehicle in this Commonwealth:

(1) He or she has given his or her consent to one (1) or more tests of his or her blood, breath, and urine, or combination thereof, for the purpose of determining alcohol concentration or presence of a substance which may impair one's driving ability, if an officer has reasonable grounds to believe that a violation of KRS 189A.010(1) or 189.520(1) has occurred;

. . . .

(7) After the person has submitted to all alcohol concentration tests and substance tests requested by the officer, the person tested shall be permitted to have a person listed in subsection (6) of this section of his or her own choosing administer a test or tests in addition to any tests administered at the direction of the peace officer. Tests conducted under this section shall be conducted within a reasonable length of time. Provided, however, the nonavailability of the person chosen to administer a test or tests in addition to those administered at the direction of the peace officer within a reasonable time shall not be grounds for rendering inadmissible as evidence the results of the test or tests administered at the direction of the peace officer.

KRS 189A.105 addresses situations where a person refuses to submit to a test requested by the officer, and it states in relevant part as follows:

(1) A person's refusal to submit to tests under KRS 189A.103 shall result in revocation of his driving privilege as provided in this chapter.

(2) (a) At the time a breath, blood, or urine test is requested, the person shall be informed:

-8-

. . . .

> 3. That if the person first submits to the requested alcohol and substance tests, the person has the right to have a test or tests of his blood performed by a person of his choosing described in KRS 189A.103 within a reasonable time of his arrest at the expense of the person arrested.

. . . .

> (4) Immediately following the administration of the final test requested by the officer, the person shall again be informed of his right to have a test or tests of his blood performed by a person of his choosing described in KRS 189A.103 within a reasonable time of his arrest at the expense of the person arrested. He shall then be asked "Do you want such a test?" The officer shall make reasonable efforts to provide transportation to the tests.

With this statutory framework in mind, we shall review the issue G.G. raises on appeal.

In his brief, G.G. cites to this Court's opinion in *Duncan v. Commonwealth*, No. 2011-CA-000636-DG. At the time G.G. filed his brief, *Duncan* was pending on discretionary review before the Supreme Court. The Commonwealth correctly points out that G.G. improperly relied upon this Court's opinion in *Duncan*, and we note that our opinion was not final and that the Supreme Court had accepted discretionary review, thereby depublishing our opinion by operation of Kentucky Rules of Civil Procedure (CR) 76.28(4).

Furthermore, the Supreme Court rendered an opinion reversing this Court's opinion on May 14, 2015, shortly after G.G. filed his brief.[1]

In *Duncan*, *supra*, the Supreme Court addressed the order in which a law enforcement officer may request the available tests, holding that,

> [W]hen a law enforcement officer has reasonable grounds to believe that a driver is operating a motor vehicle under the influence of alcohol, that officer may request that the driver submit to a blood test in order to determine the driver's BAC. The officer is under no obligation to administer a breathalyzer test prior to the administration of the blood test. Our holding is supported by the plain language of KRS 189A.103 and [*Beach v. Commonwealth*, 927 S.W.2d 826 (Ky. 1996)].

*Duncan*, 483 S.W.3d at 359. The Commonwealth relies upon the holding in *Duncan* to assert that a police officer may request any or all of the available tests and that the driver may not dictate which test he or she will take or in what order the tests may be given.

> From this language [KRS 189A.103(1)], the Court garners that once law enforcement has reasonable cause to believe that a driver is operating a motor vehicle under the influence of drugs or alcohol, that officer may utilize a breath, blood, or urine test, or a combination thereof, in order to uncover the driver's BAC. The statute does not declare that a specific testing order is to be followed, nor does it state that a breath test is the primary or preferred method of ascertaining the driver's BAC. Indeed, we can find no explicit or implicit directive from the General Assembly requiring law enforcement to administer a

---

[1] We note that the Commonwealth, in its brief, and G.G., in his reply brief, were able to address the application of *Duncan*.

-10-

> breathalyzer test first, prior to proceeding with blood testing. Furthermore, this statute in no way bestows power upon the driver to dictate to law enforcement which test to administer First [sic].

*Id*. at 356.

Based upon our review of the statutes, we agree with the Commonwealth that there is no conflict between the two statutes at issue. As the Commonwealth argues, KRS 189A.105(4) is a timing statute. Once the suspected impaired driver has met the requirements set forth in KRS 189A.103 and submitted to all of the testing the police officer may request, the person's right to request an independent blood test will be triggered by KRS 189A.105(4). Only after a person "has submitted to all alcohol concentration tests and substance tests requested by the officer" will that person be permitted to request such a test. KRS 189A.105(2)(a)3 is clear in that a person's right to request an independent blood test arises only after he or she has submitted to all of the tests the officer requests: "[I]f the person first submits to the requested alcohol and substance tests, the person has the right to have a test or tests of his blood performed . . . ." KRS 189A.105(4) then provides that once the final test the officer requested is administered, the officer must immediately inform the person again of his or her right to request the test or tests, but this subsection presumes that the person has submitted to all of the tests the officer requested.

In the present case, there is no dispute that G.G. refused to take the breath test as requested by Officer Agayev. G.G. signed the Informed Consent Agreement indicating that he refused to do so. That G.G. agreed to submit to the more invasive blood test has no bearing on this analysis. The law is clear that because he failed to submit to all of the tests Officer Agayev requested, G.G. was not entitled to request an independent blood test. Accordingly, the district court was correct in denying G.G.'s motion to suppress, and the circuit court was correct as a matter of law in upholding the district court's denial.

For the foregoing reasons, the opinion of the Fayette Circuit Court is affirmed.

COMBS, JUDGE, CONCURS.

THOMPSON, JUDGE, CONCURS IN RESULT ONLY.

BRIEF FOR APPELLANT:

Fred E. Peters
Rhey Mills
Lexington, Kentucky

BRIEF FOR APPELLEE:

Jack Conway
Attorney General of Kentucky

Andrew Yocum
Assistant County Attorney
Lexington, Kentucky