**Reversed and Remanded and Memorandum Opinion filed February 16, 2023**



In The

# 𝕱𝖔𝖚𝖗𝖙𝖊𝖊𝖓𝖙𝖍 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘

## NO. 14-22-00388-CV

**TRANSPORTES ZIMA REAL S.A. DE C.V., Appellant**

**V.**

**CLEMENTINA BENITEZ AND MARIA BENITEZ, Appellee**

**On Appeal from the 281st District Court
Harris County, Texas
Trial Court Cause No. 2019-18237**

## MEMORANDUM OPINION

This is an interlocutory appeal of the trial court's denial of a special appearance involving injuries sustained in a bus accident in Mexico. Concluding that appellees did not allege facts bringing Transportes within the reach of the Texas long-arm statute, we reverse and render judgment dismissing appellee's claims against Transportes for want of personal jurisdiction.

## *Background*

Appellant, Transportes Zima Real S.A. de C.V. ("Transportes"), is a corporation organized and located in Mexico. Transportes owns and operates a passenger bus service and several passenger buses. Zima Real Bus Lines, LLC ("Zima Real") is a Texas limited liability company that also owns and operates a passenger bus service and several passenger buses. Transportes and Zima Real have a contractual relationship whereby Transportes transports passengers from Mexico to the Texas/Mexico border and "hands off" the bus to an American driver employed by Zima Real pursuant to an International Interchange Service Agreement ("Interchange Agreement"). Under the terms of the Interchange Agreement and incorporated Lease Agreement, each company sells tickets for travel, which includes fees for services provided by the other company, in that other company's home country. A driver employed by Transportes carries passengers on buses owned by Transportes from locations in Mexico to a point on the Mexican side of an international bridge between Laredo, Texas and Nuevo Laredo, Tamaulipas, Mexico. The driver then exits the bus, and a driver employed by Zima Real takes over, driving the bus across the border and to destinations in the United States. The Interchange Agreement provides that Transportes has exclusive use, possession, and control over the operations in Mexico, and Zima Real has exclusive use, possession, and control over the operations in the United States. By its terms, the Interchange Agreement is governed by the law of Mexico. Transportes asserts that it and Zima Real are distinct entities that employ their own respective drivers, maintain their own insurance, and conduct business exclusively in their own respective countries.

Appellees, Clementina Benitez and Maria Benitez (collectively "the Benitezes" or "Plaintiffs") assert that they purchased tickets from Transportes to travel on a passenger bus owned and/or operated by Transportes bound for Houston,

Texas from Huetamo, Mexico.[1] While driving on the Morelia Salamanca highway near Cuitzeo, Mexico, the driver lost control, causing the bus to overturn. As a result of the accident, the Benitezes suffered serious bodily injuries. The Benitezes sued both Transportes and Zima Real, alleging that Transportes is vicariously liable for the driver's negligent operation of the bus. Plaintiffs did not claim that they bought the tickets in Texas or that any of the acts or omissions occurred in Texas.

In its special appearance with supporting evidence and attached affidavit, Transportes challenges the trial court's exercise of specific jurisdiction because the accident at issue involved a Mexican driver and occurred in Mexico in a bus owned and controlled by a Mexican corporation. Transportes also challenged the trial court's exercise of general jurisdiction because Transportes did not avail itself to the protections and privileges of doing business in Texas nor was any contact with Texas continuous or systematic. Plaintiffs allege that the trial court had specific jurisdiction over Transportes because Transportes targeted Texas as a market and Texas residents as customers for its transportation services. Appellees also claimed that the trial court had general jurisdiction over Transportes because Transportes and Zima Real are alter egos. Without entering findings of fact or conclusions of law, the trial court denied Transportes special appearance. Transportes filed this interlocutory appeal.

### Standard of Review

Whether a court has personal jurisdiction over a defendant is a question of law we review de novo. *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013). When, as here, the trial court does not enter findings of fact or

---

[1] In their petition, appellees refer to Transportes and Zima Real collectively as "Zima." Since appellees purchased the tickets in Mexico, we presume that the tickets were purchased from Transportes.

conclusions of law, we imply all facts necessary to support the trial court's ruling that are supported by the evidence. *Id.* The ruling may be challenged for legal and factual sufficiency. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). When examining a legal-sufficiency challenge, we review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *Id.* at 827. Evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the conclusion under review. *Id.* In a factual-sufficiency challenge, we consider and weigh all the evidence, both supporting and contradicting the finding. *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406-07 (Tex. 1998). We will set aside a finding for factual insufficiency only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.* at 407.

Texas courts may exercise personal jurisdiction over a nonresident if "(1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with federal and state constitutional due-process guarantees." *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007) (citing *Schlobohm v. Schapiro*, 784 S.W.2d 355, 356 (Tex. 1990)). The Texas long-arm statute extends Texas courts' personal jurisdiction as far as the federal constitutional requirements of due process will permit. *BMC Software*, 83 S.W.3d at 795; *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex.1991); *see also Schlobohm*, 784 S.W.2d at 357. The Texas long-arm statute describes what, "[i]n addition to other acts," may constitute doing business in this state. Tex. Civ. Prac. & Rem. Code § 17.042.

In a special appearance, the parties bear shifting burdens. "[T]he plaintiff

bears the initial burden to plead sufficient allegations to bring the nonresident defendant within the reach of Texas' long-arm statute." *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010); *see also Am. Type Culture Collection v. Coleman*, 83 S.W.3d 801, 807 (Tex. 2002). Once the plaintiff has pleaded sufficient jurisdictional allegations, the defendant filing a special appearance bears the burden to negate all bases of personal jurisdiction alleged by the plaintiff. *Id.*; *see also BMC Software*, 83 S.W.3d at 795. Because the plaintiff defines the scope and nature of the lawsuit, the defendant's corresponding burden to negate jurisdiction is tied to the allegations in the plaintiff's pleading. *Id.* A defendant can negate jurisdiction on either a factual or a legal basis. *Id.* at 659. If the nonresident defendant manages to negate the pleaded bases for personal jurisdiction, the burden shifts back to the plaintiff to show that the court has personal jurisdiction over the defendant. *Turman v. POS Partners, LLC*, 541 S.W.3d 895, 900 (Tex. App.—Houston [14th Dist.] 2018, no pet.).

### *Discussion*

In four issues, Transportes challenges the trial court's denial of its special appearance, contending that the trial court erred in (1) the implied finding of specific jurisdiction; (2) the implied finding of general jurisdiction; (3) the implied finding that Transportes and Zima Real are alter egos; and (4) considering the incompetent evidence offered by appellees in support of personal jurisdiction.[2]

### I.   Specific Jurisdiction

When specific jurisdiction is asserted, our analysis focuses on the relationship among the defendant, Texas, and the litigation to determine whether the plaintiff's

---

[2] In the Plaintiffs' petition and special appearance response, they alleged that the trial court had general jurisdiction over Transportes on a theory that it is Zima Real's alter ego. We therefore address Transportes' second and third issue together.

claim arises from Texas contacts. *Moncrief*, 414 S.W.3d at 150. For a nonresident defendant's forum contacts to support an exercise of specific jurisdiction, there must be a substantial connection between those contacts and the operative facts of the litigation. *Moki Mac*, 221 S.W.3d at 585. To identify the operative facts of the litigation, we look to the plaintiff's allegations. *Moki Mac*, 221 S.W.3d at 585.

Plaintiffs allege that Transportes and its employees had a duty to act as a reasonably prudent person while operating the bus and that Transportes and its employees breached its duty and are responsible for the following:

- failing to maintain control of the bus;

- failing to control the vehicle speed;

- failing to operate the vehicle safely;

- failing to keep a proper lookout;

- failing to properly hire, train, and supervise employees;

- failing to properly inspect and maintain the bus;

- negligently undertaking the responsibility to maintain the bus at issue in proper working order;

- violating applicable local, state, and federal laws and/or regulations;

- negligently entrusting vehicle to an unlicensed, incompetent, and/or reckless driver; and/or

- other acts deemed negligent.

All of Plaintiffs' allegations in their petition concern the driver's negligent operation of the bus. These facts occurred in Mexico where the bus driver was employed. The operative facts of the litigation are limited to questions of whether

6

the bus driver acted as a reasonably prudent person while operating the vehicle, and whether Transportes negligently entrusted the vehicle to the bus driver. *See Moki Mac*, 221 S.W.3d at 585; *see also Transportes de Zima Real S.A. de C.V. v. Lizarraga*, No. 14-13-00933-CV, 2014 WL 3512858, at *2-3 (Tex. App.—Houston [14th Dist.] July 15, 2014, no pet.) (mem. op.)

We are not persuaded by Plaintiffs' argument that Transportes targeted Texas as a market because they purchased the bus ticket with the sole intention of obtaining services in Texas, *i.e.* transportation from Mexico to Texas. This argument was rejected in *Moki Mac*. In *Moki Mac*, the Texas Supreme Court found that "Moki Mac's statements in its brochures and release [did] not bear the same direct link to Andy's injury as did Siskind's claim to recover money lost under the contract."[3] Specifically,

> "Moki Mac's promotional representations, while theoretically sufficiently related to Andy's injury on the hiking trail in the sense that but for them he might not have been there, are not sufficiently related to the operative facts underlying Andy's injury for which the Druggs seek recovery in wrongful death to sustain the exercise of specific jurisdiction."

*Id.* at 588.

The fact that Plaintiffs bought a bus ticket in Mexico that would eventually take them to Texas is not sufficiently related to the operative facts so as to subject Transportes to specific jurisdiction. The operative facts in this case do not relate to ticket sales in Mexico but rather Transportes' negligent operation of a bus in Mexico

---

[3] In *Siskind*, the school solicited students in Texas through national magazines and local telephone books and the contract between Siskind and the school specifically provided that, if Siskind's son left during the school year, his tuition would be reimbursed. *Siskind v. Villa Found. for Educ., Inc.*, 642 S.W.2d 434, 435-36 (Tex. 1982). The Texas Supreme Court held that there was a "connection between Siskind's claim for breach of contract and Villa's contract with Texas." *Id.* at 437.

that resulted in injuries.

The Benitezes also postulate that Transportes reached beyond its Mexican borders when it contracted with Zima Real, a Texas citizen. This assertion is contrary to established law because it is well-settled that the actions of a third-party cannot form the basis of jurisdiction over a nonresident defendant. *See McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957); *see also Kulko v. California Superior Court*, 436 U.S. 84, 94 (1978). Even if we could give deference to the contractual relationship, a nonresident may purposefully avoid a particular jurisdiction by structuring its transactions so as neither to profit from the forum's laws nor be subject to its jurisdiction. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005). This is precisely the case before us.

Pursuant to the Interchange Agreement, Transportes structured its contract with Zima Real where each party had complete control and responsibility in their respective segments (*i.e.*, Transportes in Mexico and Zima Real in Texas). Moreover, it cannot be said that Transportes invoked the "benefits and protections" of Texas's laws given that the Interchange Agreement is governed by the laws of Mexico. *See Kulko*, 436 U.S. at 94. The Transportes-Zima Real contract, standing alone, is insufficient evidence to establish that Transportes purposefully availed itself of the privilege of conducting business activities in Texas. *See id.*

Plaintiffs' remaining arguments and evidence in support of specific jurisdiction are also unavailing. The Benitezes attempt to create a jurisdictional nexus based on evidence that Transportes: (1) secured special permission for the bus at issue cross into Texas; (2) maintained registered property in Texas; (3) has officers and directors in Texas; (4) performed print and internet advertising in Texas; (5) and received payment for its bus activities in Texas. Assuming the evidence was properly authenticated, we need not consider any of these arguments because these potential

contacts are not related to the accident or the operative facts of this case. *See Grupo TMM, S.A.B. v. Perez*, 327 S.W.3d 357, 361-62 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (holding that the Texas court lacked specific jurisdiction over Mexican companies for a motor vehicle accident in Mexico where any negligence occurred in Mexico) (citing *Felch v. Transportes Lar-Mex S.A. de C.V.*, 92 F.3d 320, 324 (5th Cir. 1996)).

**Conclusion.** We sustain Transportes' first issue that it was not subject to personal jurisdiction based on specific jurisdiction.

## II.    General Jurisdiction

In its second and third issue, Transportes challenges the trial court's implied finding of general jurisdiction because there is insufficient evidence that Transportes is "at home" in Texas or has continuous or systematic contacts with Texas. *See Searcy v. Parex Res., Inc.*, 496 S.W.3d 496 S.W.3d 58, 72 (Tex. 2016) ("Courts do not have general jurisdiction over corporate defendants that are neither incorporated in the forum state nor have their principal place of business there, absent some relatively substantial contacts with the forum state."). In its third issue, Transportes challenges the trial court's implied finding that Transportes and Zima Real are alter egos that should be treated as one entity for jurisdictional purposes because the two companies are geographically and operationally separated. While Plaintiffs' do not contend that Transportes is organized under Texas law or that Transportes is "at home" in Texas, their general jurisdictional argument depends largely on their contention that Transportes and Zima Real are alter egos. We therefore turn to the question of whether Plaintiffs met their burden to establish that contention.

"[G]eneral jurisdiction is only present when a defendant not only has continuous and systematic contacts with the forum state, but also has these kinds of contacts to such an extent that they render it essentially at home in that state." *Id.* at

9

72-73. Because general jurisdiction permits a court to exercise personal jurisdiction over a nonresident for claims not directly linked to his contacts with the state, a general jurisdiction inquiry requires a more demanding minimum-contacts analysis with a "substantially higher threshold." *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 168 (Tex. 2007). Even when a defendant's contacts may be continuous and systematic, they are insufficient to confer general jurisdiction if they fail to rise to the level of rendering a defendant "essentially at home in the forum [s]tate." *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 565 (Tex. 2018).

Regarding the alter ego claims, the burden of piercing the corporate veil and demonstrating a corporation was used as an alter ego is always on the plaintiff. *See BMC Software*, 83 S.W.3d at 798-99; *Washington DC Party Shuttle, LLC v. IGuide Tours*, 406 S.W.3d 723, 738-39 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). This is because Texas law imposes a rebuttable presumption that a corporation is a separate entity from its officers and shareholders. *See BMC Software*, 83 S.W.3d at 798-99; *Washington DC Party Shuttle*, 406 S.W.3d at 738-39.

To "fuse" the parent company and its subsidiary for jurisdictional purposes, the plaintiff must prove the parent controls the internal business operations and affairs of the subsidiary. *BMC Software*, 83 S.W.3d at 799 (citing *Conner v. ContiCarriers & Terminals, Inc.*, 944 S.W.2d 405, 418-19 (Tex. App.—Houston [14th Dist.] 1997, no writ)). The degree of control the parent exercises must be greater than that normally associated with common ownership and directorship; the evidence must show that the two entities cease to be separate so that the corporate fiction should be disregarded to prevent fraud or injustice. *See id.* (citing *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1160 (5th Cir. 1983)). To determine whether an alter ego relationship exists for jurisdictional purposes between an individual and

10

his corporation, courts look to the total dealings of the corporation and the individual, including the degree to which corporate and individual property have been kept separate, the amount of financial interest, ownership, and control the individual maintains over the corporation, and whether the corporation has been used for personal purposes. *Wilmington Tr., Nat'l Ass'n v. Hsin-Chi-Su*, 573 S.W.3d 845, 855 (Tex. App.—Houston [14th Dist.] 2018, no pet.).

The Benitezes point to the following as evidence to pierce the corporate veil between Transportes and Zima Real: (1) the two companies share revenue; (2) there is an overlap of ownership and management between the two companies; (3) Transportes employees reside and work in Texas; (4) public records show that Transportes has registered property in Harris County; and (5) the advertising published by Transportes refers to itself and Zima Real as a single company.

Even considering the challenged exhibits, we do not agree that the evidence cited by the Benitezes establish that Zima Real and Transportes are alter egos. In *Booth Creek*, this court held that the evidence before the trial court was legally and factually sufficient to support the trial court's implied finding that Booth Creek and Gillett were alter egos because (1) Booth Creek did not observe corporate formalities, nor did Gillett and Booth Creek keep separate finances; (2) Gillett owned 100% of Booth Creek; and (3) Gillett exercised atypical control over Booth Creek's business operations in a manner inconsistent with investor status. *See Booth Creek Mgmt. Corp. v. New Exec. Grp. Ltd.*, No. 14-19-00715-CV, 2020 WL 4760163, at * 8 (Tex. App.—Houston [14th Dist.] Aug. 18, 2020, no pet.) (mem. op).

Here, none of the same factors are present. There is no evidence in the record to support any implied findings by the trial court that Zima Real was Transportes' alter ego so that general jurisdiction exists in Texas. First, there is no evidence before

11

us that Transportes and Zima Real share revenue. Second, while there may be evidence that Vicente Vazquez de la Torre is Transportes' CEO/president and Zima Real's president, it was insufficient to establish that Transportes and Zima Real "ceased to be separate so that the corporate fiction should be disregarded." See *PHC-Minden*, 235 S.W.3d at 175.[4] Third, the residence of Transportes employees or the registration of property are not dispositive in determining if Transportes exercised atypical control over the day-to-day internal operations of Zima Real. *See BMC Software*, 83 S.W.3d at 799 ("To fuse the parent company and its subsidiary for jurisdictional purposes, the plaintiffs must prove the parent controls the internal business operations and affairs of the subsidiary."). The overwhelming weight of the evidence indicates that Transportes is a Mexican corporation operating solely in Mexico, and Zima Real is a Texas limited liability company operating solely in Texas.

To the extent Plaintiffs argue that the evidence discussed above demonstrates a lack of adherence to corporate formalities and a blurring of corporate boundaries, we disagree. The evidence indicates the contrary—that Transportes adhered to corporate boundaries and corporate formalities. *See Wormald v. Villarina*, 543 S.W.3d 315, 322 (Tex. App.—Houston [14th Dist.] 2017, no pet. (rejecting alter ego theory of personal jurisdiction because although there was evidence that "various corporate entities closely worked together, there is no evidence that [the alleged

---

[4] There was evidence presented that Vicente Vazquez executed a power of attorney in favor of Jose Manuel to "act on behalf of Transportes in all matters." The power of attorney was attached as an exhibit to Jose Manuel Vazquez de la Torre's affidavit. There is no indication that the Plaintiffs objected to the power of attorney. The record reveals that this power of attorney is entirely in Spanish and was not accompanied with a certified English translation. Neither the trial court nor this court can review the content or substance of the power of attorney without certified English translations. *See* Tex. R. Evid. 1009 (setting out the procedure for admitting translation of documentation in a foreign language). The court of appeals does not act as a translator for litigants. *See El Pescador Church, Inc. v. Ferrero*, 594 S.W.3d 645, 664, n.10 (Tex. App.—El Paso 2019, no pet.).

individual alter egos] dominated the will of any of the entities"); *Knight Corp. v. Knight*, 367 S.W.3d 715, 730 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ("This burden cannot be satisfied merely by establishing that the parent corporation dominates the subsidiary and exerts its control both commercially and financially in substantially the same way it does over those selling branches or departments of its business."). In any event, evidence of a lack of observance of corporate formalities does not compel an alter ego finding. *See TMX Fin. Holdings, Inc. v. Wellshire Fin. Servs., L.L.C.*, 515 S.W.3d 1, 9 (Tex. App.—Houston [1st Dist.] 2016, pet. filed) ("[W]e decline to conclude that the failure to follow corporate formalities, particularly for this family-held group of entities is sufficient, in itself, to demonstrate that the two entities are one.").

**Conclusion.** We conclude the evidence, viewed in the light most favorable to the trial court's ruling, does not support the implied finding that Transportes' contacts with Texas were so continuous and systematic as to render it essentially at home in the state. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Similarly, the record does not reveal sufficient evidence to support the trial court's implied conclusion that Transportes and Zima Real are alter egos that should be regarded as one entity for jurisdictional purposes. *See BMC Software*, 83 S.W.3d at 800. Concluding that the trial court lacked general jurisdiction over Transportes, we sustain Transportes second and third issues.

## *Conclusion*

Having concluded that the trial court lacked jurisdiction over Transportes, we need not reach the remaining issue. We reverse and render judgment dismissing the Benitezes' claims against Transportes for want of personal jurisdiction.

/s/    Frances Bourliot
       Justice


Panel consists of Chief Justice Christopher and Justices Bourliot and Wilson.